TIMOTHY COURCHAINE
United States Attorney
District of Arizona

RAYMOND K. WOO
Arizona State Bar No. 023050
BRUCE R. VAN BAREN
Illinois State Bar No. 6310375
Assistant United States Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Raymond.Woo@usdoj.gov
Email: Bruce.Van.Baren@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br>    v.<br><br>Marshal Wayne Plummer,<br><br>              Defendant. | Case No. CR-25-01411-PHX-MTL (ASB)<br><br>**UNITED STATES' NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS PURSUANT TO FED. R. EVID. 404(b)** |

## I.    INTRODUCTION

Defendant Marshal Wayne Plummer ("Defendant") posted four true threats on social media platform X in June and July 2024. A true threat is "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). Defendant made these four true threats to (1) Jewish people, (2) the Israeli Head of State's son whom he said was in the United States, (3) a different Israeli government official, and (4) a Missouri State Representative.

Prior to making these four threats, Defendant made other threats on social media in May and June 2024. Defendant first used his account on a different social media platform, TikTok, to make an unspecified threat "to gas chamber these mfs."—though the context provided by other messages sent to this user makes clear he was referring to Jewish people.[1]

---

[1] About a week prior, Defendant stated on TikTok: "Well, it's official. I hate Jews." *See* Fed. R. Evid. 801(d)(2) (defendant's statements admissible as party admission).

Thereafter, Defendant used his X account to threaten others, including threatening a Jewish businessperson and threatening a Jewish actor; many of which resulted in X temporarily locking his account for violating its rules against violent speech. In addition, Defendant created a note in his phone in April 2024—the month prior to making these other threats, about an antisemitic theory that Jewish people are the children of Satan.

The United States intends to introduce evidence of this social media content, X's locking of his account, and his note to prove Defendant's intent, knowledge, motive, and absence of mistake or accident in posting the four threats he is charged with making. Defendant's prior threats on social media, X's locking of his account, and his note are all from the same time frame and about the same subject matter as these threats. The United States therefore provides this notice to Defendant, to the extent required under Rule 404(b) of the Federal Rules of Evidence, that it intends to introduce evidence at trial of his other crimes, wrongs, or acts—though much of this evidence is exempt from the requirements of Rule 404(b) because it is "inextricably intertwined" with the charges against him.

## II.    BACKGROUND

On October 14, 2025, a federal grand jury indicted Defendant—a 45-year-old lifelong Phoenix resident—on four counts of violating 18 U.S.C. § 875(c), Transmitting a Communication Containing a Threat to Injure—one count for each post. Defendant rejected the United States' plea offers and will be tried before a jury beginning on June 9, 2026.

As charged in Count 1 of the Indictment, on June 20, 2024, Defendant used his "@prepperbeenet" X account to post the following threat to kill all Jewish people: "Calling all TRUE Americans! It's open season on Zionists! Do not grant them the mercy you would a rabid wolf. ERADICATE THEM!!!!!!" (Doc. 1 at 3.) Defendant posted his threat in response to another X user's post: "!!Breaking: Palestinian prisoner released from Israeli jail shows severe mental health issues. This is crimes against humanity." (Doc. 1 at 2.)

2

Count 2 of the Indictment charges that, on June 24, 2024, the Israeli Head of State posted on X about kidnapped victims whom had been held by the foreign terrorist organization Hamas since the group's horrific attack on Israel on October 7, 2023. (Doc. 1 at 2.) That same day, in response to the Israeli leader's post, Defendant used his "@prepperbeenet" X account to post the following threat to kill the son of the Israeli Head of State: "We The People here in America have a DUTY to track down @[REDACTED]'s son who is hiding here in America, and neutralize him." (Doc. 1 at 3.)

As charged in Count 3 of the Indictment, on June 30, 2024, Defendant used his "@prepperbeenet" X account to post the following threat to kill a different Israeli government official: "If I ever see you in America, you will not see the next day." (Doc. 1 at 4.) Defendant's post was in response to the official's post on X on July 9, 2023—a few months before the October 7, 2023 attack, that "Citizens who neutralize terrorists will no longer have their weapon confiscated, thanks to my reform in the Min. of National Security. Too many heroes who killed threatening terrorists had their weapons revoked. Citizens who defended themselves deserve an award! Not confiscations." (Doc. 1 at 2.)

Count 4 of the Indictment charges that, on July 10, 2024, Defendant used his "@prepperbeenet" X account to post the following threat to kill a Missouri State Representative: "I am a BIG supporter of 2A. That being said, if I *EVER* see your pedophile ass, you won't see the next day, you got me boy?" (Doc. 1 at 4.) Defendant's post was in response to the state representative's post on X on April 15, 2023, about arguments he had made during legislative debate on carrying concealed firearms. (Doc. 1 at 2.)

For the jury to convict him on each count, the United States must prove two elements beyond a reasonable doubt: (1) the defendant knowingly transmitted in interstate or foreign commerce a communication that contained a threat to injure another person; and (2) such communication was transmitted for the purpose of issuing a threat, with knowledge that the

communication would be viewed as a true threat, or recklessly (i.e., with conscious disregard of a substantial risk that the communication would be viewed as a threat). *Counterman v. Colorado*, 600 U.S. 66, 70-79 (2003). If the jury convicts Defendant, the U.S. Sentencing Guidelines provide for a sentencing enhancement where "the finder of fact at trial … determines beyond a reasonable doubt that the defendant intentionally selected any victim … as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, [or] ethnicity … of any person." U.S.S.G. § 3A1.1 (2024).

## III.   LEGAL STANDARD

### A.   Admissibility of Relevant Evidence Under Fed. R. Evid. 401, 402, and 403

The purposes of the Federal Rules of Evidence include to "administer every proceeding fairly … and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." FED. R. EVID. 102. To that end, Rule 402 provides that "[r]elevant evidence is admissible unless" prohibited by the U.S. Constitution, a federal statute, the Federal Rules of Evidence, or Supreme Court Rules. FED. R. EVID. 402. Rule 401 provides that "[e]vidence is relevant if … it has a tendency to make a fact more or less probable that it would be without the evidence … and the fact is of consequence in determining the action." FED. R. EVID. 401. Even so, Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

However, the Ninth Circuit has made clear that Rule 403 is "'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence,'" and "the danger of prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (quoting *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987)

4

(emphasis in original)). The danger of prejudice must be substantial because "[a]ll evidence introduced against a criminal defendant might be said to be prejudicial if it tends to prove the prosecution's case." *United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001).

**B.    Evidence of Other Crimes, Wrongs, or Acts Under Fed. R. Evid. 404(b)**

Rule 404(b) governs the prohibited and permitted uses of evidence of a defendant's other crimes, wrongs, or acts. It provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." FED. R. EVID. 404(b)(1). But such evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). "So long as the evidence is offered for a proper purpose …, the district court is accorded wide discretion in deciding whether to admit the evidence, and the test for admissibility is one of relevance." *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997) (citation omitted).

1.    Ninth Circuit's Exceptions for "Inextricably Intertwined" Evidence

With respect to the scope of "other act" evidence, the Ninth Circuit has made clear that "Rule 404(b) applies solely to evidence of 'other' acts, not to evidence of the very acts charged as crimes in the indictment." *United States v. Loftis*, 843 F.3d 1173, 1176 (9th Cir. 2016). As such, "evidence should not be considered 'other crimes' or 'other act' evidence within the meaning of Rule 404(b) if 'the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined.'" *Id.* (quoting *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012)). Evidence is "inextricably intertwined" and therefore exempted from requirements of Rule 404(b) where (1) it "constitutes a part of the transaction that serves as a basis for the criminal charge"; and (2) it is "necessary … in order to permit the prosecutor to offer a coherent and comprehensible story regarding the

5

commission of the crime." *United States v. Carpenter*, 923 F.3d 1172, 1181 (9th Cir. 2019) (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995)).

   2.   Ninth Circuit's Test for Admissibility of Rule 404(b) Evidence

Where evidence does fall under Rule 404(b), the Ninth Circuit applies a four-part test to determine its admissibility. A district court may admit other act evidence if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged. *United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020) (citation omitted). The Ninth Circuit liberally construes Rule 404(b) as "a rule of inclusion—not exclusion—which references at least three categories of other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge." *Id.* (quoting *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc)).

With respect to the sufficiency of the evidence prong, the Ninth Circuit applies a "low threshold test of sufficien[cy]." *Id.* (quoting *United States v. Dhingra*, 371 F.3d 557, 566 (9th Cir. 2004)). Accordingly, the United States "need not prove Rule 404(b) evidence by a preponderance of the evidence." *Id.* (quoting *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012)). Rather, the United States "need only lay a factual foundation from which a 'jury could reasonably conclude that [the defendant] committed the allegedly-similar bad acts,' and that he possessed the requisite intent in committing those bad acts." *Id.*

   3.   Notice to Defendant of Intent to Introduce Rule 404(b) Evidence

Rule 404(b)(3) requires the prosecution in a criminal case to provide "reasonable notice" to the defendant, and to "do so in writing before trial," of any evidence of his or her other crimes, wrongs, or acts that the prosecution "intends to offer at trial, so that the defendant has a fair opportunity to meet it." FED. R. EVID. 404(b)(3)(A), (C). In addition,

6

the notice must include "the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." FED. R. EVID. 404(b)(B).

## IV.    ARGUMENT

The United States anticipates introducing evidence of Defendant's message on TikTok in May 2024, other posts Defendant made on X from May to July 2024—and account locks due to three of these posts, and an April 2024 note extracted from Defendant's phone. The United States intends to introduce this evidence to prove Defendant's intent, knowledge, motive, and absence of mistake or accident when making the true threats with which he is charged in Counts 1–4. This evidence is relevant to proving both elements of Defendant's § 875(c) charges and the sentencing enhancement, which require proof of his mens rea and motive. *Counterman*, 600 U.S. at 70-79; U.S.S.G. § 3A1.1.

This evidence is "inextricably intertwined" with Defendant's charged conduct or, alternatively, meets the four-part test for admissibility under Rule 404(b). First, the content of his social media message and posts, notices that his account had been locked because of three of these posts, and the note all tend to prove that Defendant intended his posts to be threats and knew they would be viewed as a threat (or at least consciously disregarded the substantial risk that they would be viewed as threats). Further, the content of his social media message and posts and this note is similar to the content of Defendant's true threats on social media, made around the same timeframe, and found in the phone seized from his bedroom and business records obtained from the social media platform on which he posted.

Moreover, the Court should not employ the "extraordinary remedy" under Rule 403 to exclude this relevant and admissible evidence. Given the content of his charged threats, there is no danger of unfair prejudice to him from admitting his other social media content, X's responses, and the note about this same subject matter during this same time frame. And even if there is a danger of unfair prejudice, the probative value of showing his intent,

7

knowledge, motive, and absence of mistake or accident in making these threats outweighs any danger of unfair prejudice, especially if the Court provides a limiting instruction.

## A.    Admissibility of Evidence of Defendant's Other Crimes, Wrongs, or Acts

1.    Defendant's social media message on TikTok and posts on X in May and June 2024 threatening Jewish People

The United States intends to introduce evidence of one message Defendant sent on TikTok in May 2024 and five posts Defendant made on X in May and June 2024. This time frame is the month before and same month that Defendant posted the threat charged in Count 1 calling for the eradication of all "Zionists," which is used as an antisemitic trope and proxy for the word "Jews."[2] These messages and posts and X's responses include:

(a) Defendant's message on TikTok threatening to "gas chamber these mfs." (sent about a week after declaring in a message to the same user that "I hate Jews");

(b) Defendant's post on X threatening to harm E.D.—a Jewish businessperson;

(c) X's temporary lock of Defendant's X account for his threat to E.D.;

(d) Defendant's three posts on X threatening to harm and kill M.R.—a Jewish actor;

(e) X's temporary locks of Defendant's X account for his threats against M.R.; and

(f) Defendant's post on X threatening to kill other Jewish people.

The evidence of these messages and posts, and X's responses, that the United States intends to admit are detailed below with citations to the bates labels of the discovery.

This evidence shows Defendant's intent, knowledge, and motive for making the threats charged in Counts 1-4 and why he created a new X account to make them. Defendant

---

[2] At trial, the United States will call Andrea Martin, an Assistant Professor of Law at Penn State Dickinson Law School, who is expected to provide expert testimony that: Defendant's statements (as referenced herein) used antisemitic tropes; seemingly targeted a collective group associated with Jewish identity; seemingly called for violence against the collective group associated with Jewish identity; and his use of "Zionist" was a proxy for that identity.

made three of the posts using his X account with username "@cybersurfer79," and the other two using his X account with username "@prepperbeenet." After each of the posts using his "@cybersurfer79" X account, X temporarily locked Defendant's account for violating its rules against violent speech. After X temporarily locked Defendant's "@cybersurfer79" X account for the second time, Defendant created the "@prepperbeenet" X account. After X locked his "@cybersurfer79" X account a third time, Defendant used his new "@prepperbeenet" X account to post the threat to kill all "Zionists" charged in Count 1, and over the ensuing weeks, he used this account to make the threats charged in Counts 2-4.

### a.    Defendant's TikTok Message on May 7, 2024

On May 7, 2024, Defendant used his TikTok account with account name "karma Troll." (and username "my0theraccount_," user ID "Marsha Avila," and email address "metaversemarsha@gmail.com") to send a direct message to another TikTok user with whom he had been messaging for about a year. Defendant stated: "I can't wait to gas chamber these mfs." (PLUMMER_001483; PLUMMER_001501)[3]

### b.    Defendant's X Post on May 23, 2024

On May 23, 2024, Defendant used his X account with username "@cybersurfer79" to post a threat to harm E.D.—a Jewish researcher, lecturer, entrepreneur, and investor. Defendant posted: "@[REDACTED] STFU liar before I come for you child predator ass. Baby killing Satanist fuck stain. I hope you get cancer this year." (PLUMMER_00498) Later

---

[3] Defendant's message came about a week after he sent another message on TikTok to the same user on April 29, 2024: "Well, it's official. I hate Jews." (PLUMMER_001482; PLUMMER_001501) This message is not "other crimes, wrongs or acts" evidence subject to Rule 404(b); instead, it is admissible when offered by the United States against Defendant as an opposing party admission under Rule 801(d)(2). *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (A defendant's "self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay." (citing Fed. R. Evid. 801(d)(2))); *Territory of Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir. 1985) ("[c]ases interpreting section 801(d)(2)(A) are in agreement that statements need not be incriminating" to be admissions" and "need only to relate to the offense").

that day, X temporarily locked Defendant's "@cybersurfer79" X account for violating its rules against violent speech. (PLUMMER_000498)

c.    Defendant's X Post on June 4, 2024

Just about two weeks later, on June 4, 2024, Defendant used his same X account with username "@cybersurfer79" to post a threat to harm M.R.—a Jewish actor. Defendant posted: "@[REDACTED] You should come to Arizona so I can bust your mouth open for ya." (PLUMMER_000561) Later that day, X again temporarily locked Defendant's "@cybersurfer79" account for violating its rules against violent speech. (PLUMMER_000561)

d.    Defendant's X Post on June 14, 2024

About a week later, on June 11, 2024, Defendant created a new account on X with username "@prepperbeenet," and on June 14, 2024, Defendant used it to post a second threat to M.R.—this time to kill him. Defendant posted: "@[REDACTED] By this time next year, @[REDACTED] will no longer exist on planet earth. BIG plans for you buddy." (PLUMMER_000636) Although X had locked Defendant's "@cybersurfer79" account, X did not lock his new "@prepperbeenet" after he made this threatening post.

e.    Defendant's X Post on June 20, 2024

Less than a week later, on June 20, 2024, Defendant used his X account with username "@cybersurfer79"—the same account he used to threaten to harm E.D. on May 23, 2024 and M.R. on June 4, 2024—to again threaten to harm M.R. Defendant posted: "@[REDACTED] He was IDF so he got what you deserved you silly child killing Zionist. Not only is it deserved, it's fucking hilarious. Soon we will be dragging you child predators from your homes. Be it's not ME that has him hostage. I would force feed him his family's remains." (PLUMMER_000560) Later that day, X temporarily locked—for a third time—

10

Defendant's "@cybersurfer79" account for violating its rules against violent speech. (PLUMMER_000560)

f.    Defendant's X Posts on June 20, 2024

Later that same day, June 20, 2024, after receiving notice that his "@cybersurfer79" account had again been locked, Defendant used his new "@prepperbeenet" account to post a threat to kill other Jewish people: "@[REDACTED] @[REDACTED] As a gun toting American, I can't tell you what an honor it will be dragging you Zionists from your homes. Since you are 'Gods Chosen People'. We will send you to Him, and those of you He wants, He can keep. Either way, God can have you once we've finished with you." (PLUMMER_000636) Defendant also posted the threat charged in Count 1 to all Jewish people: "Calling all TRUE Americans! It's open season on Zionists! Do not grant them the mercy you would a rabid wolf. ERADICATE THEM!!!!!!" (PLUMMER_001392.)

\*\*\*

Defendant's message on TikTok on May 7, five posts on X—one on May 23, June 4, and June 10, and two on June 20, and X's temporary locks on Defendant's X account do not constitute other acts under Rule 404(b). Instead, as this complete sequence of events shows, Defendant's TikTok message, his five other X posts, and X's responses to three of them are all "inextricably intertwined" with Defendant's use of his new X account to post a threat to eradicate all Zionists (i.e., Jewish people), as charged in Count 1, and his other threats to Israeli leaders and a U.S. elected official Charged in Counts 1-4. (Doc. 1 at 3.) Indeed, Defendant's message and posts fall into both categories of "inextricably intertwined" evidence that the Ninth Circuit has held is exempted from the requirements of Rule 404(b). *See Dorsey*, 677 F.3d at 951 (identifying two categories of evidence exempted from Rule 404(b): (1) acts that "constitute[] a part of the transaction that serves as the basis

11

for the criminal charge" and (2) evidence "necessary … to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime").

Here, Defendant's message and posts are part of the sequence of events leading to his charged threat to Jewish people and help explain what he intended to communicate, what he knew he was communicating, and what motivated him to make this threat. To start, Defendant declared in a private message to another TikTok user with whom he had been conversing for about a year, "I hate Jews," and later messaged the same user, "I can't wait to gas chamber these mfs," which in context seems to refer to Jewish people. Defendant then posted a public threat to E.D.—a Jewish businessperson—and three threats directed at M.R.—a Jewish actor—promising first to harm and then to kill him. These posts make clear that Defendant was threatening to harm E.D. and M.R. because they are Jewish—labeling E.D. a "[b]aby killing Satanist" and M.R. a "silly child killing Zionist," which are age-old antisemitic tropes. *See, e.g.*, Tress, Luke, *Old-fashioned antisemetic tropes and trendy anti-Zionism converge at US Quds Day rallies*, The Times of Israel (Mar. 19, 2026 at 4:35 p.m.);[4] Jacobson, Howard, *Tales of infanticide have stoked hatred of Jews for centuries. They echo still today*, The Guardian (Oct. 6, 2024 at 2:30 p.m. EDT).[5] After X locked the account that Defendant had used to make these posts to E.D. and M.R., he then used his new X account to threaten to injure and then kill other Jewish people—sarcastically labeling them "Gods Chosen People" and promising to send them back to God—and ultimately to eradicate all Jewish people: "Calling all TRUE Americans! It's open season on Zionists! Do not grant them the mercy you would a rabid wolf. ERADICATE THEM!!!!!!" (Doc. 1 at 2.)

---

[4] https://www.timesofisrael.com/old-fashioned-antisemitic-tropes-and-trendy-anti-zionism-converge-at-al-quds-day-rallies/ (last visited Apr. 9, 2026).

[5] https://www.theguardian.com/commentisfree/024/oct/06/tales-of-infanticide-have-stoked-hatred-of-jews-for-centuries-they-echo-still-today (last visited Apr. 9, 2026).

12

In sum, over the course of about six weeks, Defendant went from espousing private threats to public threats, and escalated his public threats to injure and then kill a select few Jewish people to a threatening call for the eradication of all Jewish people. The latter threat is charged in Count 1, and the Court should therefore admit this evidence of his prior threats on X directed at Jewish people as "inextricably intertwined" with Count 1. *See United States v. Liesse*, No. 20-10096, 2021 WL 5275819, at *2 (9th Cir. Nov. 12, 2021) (defendant's trip to bank before he twice called and threatened bank teller over the phone "'inextricably intertwined' with his statements regarding the teller on both calls"). In addition, X's locking of his account because of three of these posts shows why he created a new X account, which he then used to make the threats charged in Count 1–4, and that he knew each of these charged threats would be viewed as such. *See Vizcarra-Martinez*, 66 F.3d at 1012-13 ("[I]t is obviously necessary in certain cases for the government to explain … the events surrounding the commission of the crime."). Therefore, this Court should also admit this evidence as "inextricably intertwined" with Counts 1–4.

Alternatively, the Court should admit the evidence of these posts under Rule 404(b) because it meets all four prongs of the Ninth Circuit's four-part test.

First, Defendant's social media message and posts, and X's locking of his accounts because of some of these posts, are relevant to proving his intent, knowledge, and motive. Defendant's prior threats tend to prove that he actually intended to make threats to kill or injure as charged in Counts 1–4, was aware his threats would be viewed as such, or was at least reckless to the fact he was making threats. *See Liesse*, 2021 WL 5275819, at *2 (reiterated threatening communications indicative of subjective intent) (citing *United States v. Bachmeier*, 8 F.4th 1059, 1065 (9th Cir. 2021) (same)). Defendant's prior threats at certain Jewish community members, at a minimum, evidences his intent, knowledge, or motivation in threatening to eradicate all "Zionists" in Count 1. And the fact that Defendant

persisted in making threats in a new account, even after having his account temporarily locked by X three times, tends to prove he intended to convey threats to injure, was aware his threats would be viewed as such, or that he was acting recklessly.

Second, Defendant's prior threats and X's temporary locks are not too remote as they all occurred within about 6-8 weeks of the charged conduct. *See United States v. Miah*, 120 F.4th 99, 112 (3d Cir. 2024) (affirming admission of threatening social media posts made years before charged threats); *United States v. Linehan*, 835 F. App'x 914, 916-17 (9th Cir. 2020) (affirming admission of threatening emails sent years before charged threats).

Third, there is sufficient evidence to prove the other acts. Defendant admitted to using the "@cybersurfer79" and "@prepperbeenet" X accounts, and evidence from his phone and records from X, Google, and his internet service provider confirm as much. Also, in a February 25, 2025 interview, Defendant acknowledged that X had temporarily locked his accounts.[6] Similarly, evidence from Defendant's phone and records from TikTok prove he used the "karma Troll." TikTok account.

Fourth, Defendant's prior threats are similar to his conduct in Counts 1–4 as they all involve his intent, knowledge, or recklessness in conveying threats to injure when using social media. And Defendant's prior threats, which espoused antisemitic beliefs, tend to show that he was targeting people of Jewish faith when he called for the eradication of "Zionists" in Count 1. Indeed, the timing of Defendant's threats involved a threat to injure

---

[6] FBI Special Agent Joshua Arndt of the FBI's Computer Analysis Response Team ("CART"), will testify that the forensic program he used to exam the data extracted from Defendant's cellular telephone indicated that the three emails from X to Defendant's "alexarcadian420@gmail.com" email address notifying him that the account had been locked were in an "unread" status. Agent Arndt will testify that the "unread" status means that the emails were not opened on Defendant's phone. Agent Arndt will explain that does not mean the emails were not opened or viewed in a different instrument such as a different phone or computer. The emails received by Defendant are relevant to corroborate his acknowledgement of having his X accounts locked and to show that his creation of the "@prepperbeenet" X account was made in response to his account being temporarily locked.

14

prominent Jewish people, then similar threats to other Jewish people, and then a threatening call for the total eradication of all Jewish people. *See Johnson*, 132 F.3d at 1283 ("[The defendant's] past conduct need not be identical to the conduct charged, but instead need only be similar enough to be probative of intent.") (citations omitted). Therefore, if this Court does not find this content from his social media and X's responses "inextricably intertwined," it should, alternatively, admit Defendant's message on May 7 and posts on May 23, June 4, June 14, and June 20, and X's responses to them, under Rule 404(b).

       2.     <u>Defendant's X posts on July 10, 2024 threatening a State Representative</u>

The United States anticipates introducing evidence regarding Defendant's threat to kill a Missouri State Representative using his X account with username "@prepperbeenet" on July 10, 2024: "Time to send him to his final judgment." (PLUMMER_001397.) Defendant made this post the same day as, and as a follow-up to, his earlier threat to kill the Missouri State Representative charged in Count 4. (Doc. 1 at 4.) For his initial threat to kill the Missouri State Representative, Defendant posted on X using his "@prepperbeenet" account: "I am a BIG supporter of 2A. That being said, if I *EVER* see your pedophile ass, you won't see the next day, you got me boy?" (Doc. 1 at 4.)

***

As an initial matter, Defendant's post does not constitute "other acts" subject to Rule 404(b). Given the proximity in time and same target of the threat, Defendant's follow-up post is "inextricably intertwined" with his initial threat to the Missouri State Representative charged in Count 4. *See Dorsey*, 677 F.3d at 951 ("This doctrine applies when the acts in question are so interwoven with the charged offenses that they should not be treated as other crimes or acts for purposes of Rule 404(b)."); *Vizcarra-Martinez*, 66 F.3d at 1013 ("The jury cannot be expected to make its decision in a void—without knowledge of the time, pace, and circumstances of the acts which form the basis of the charge."). Defendant's post

15

falls into both categories of evidence exempted from Rule 404(b) as it is part of the same series of posts and necessary to provide the complete picture of his threat to kill the U.S. elected official charged in Count 4. (*See supra* at 10 (citing *Dorsey*, 677 F.3d at 951).)

Alternatively, the Court should admit the evidence of this post under Rule 404(b) because all four prongs of the Ninth Circuit's four-part test are met. First, Defendant's post is relevant to proving his intent and knowledge. Defendant's follow-up post reiterating his threat to kill the Missouri State Representative proves that Defendant intended to convey a threat and knew his initial threat to kill him, as charged in Count 4, would be viewed as such—or at least that he acted recklessly. (*See supra* at 12 (citing *Liesse*, 2021 WL 5275819, at \*2; *Bachmeier*, 8 F.4th at 1065).) Second, Defendant made this post the same day as his initial threat charged in Count 4, so it is not too remote. (*See supra* at 12-13 (citing *Miah*, 120 F.4th at 112; *Linehan*, 835 F. App'x at 916-17).) Third, Defendant admitted that "@prepperbeenet" was his X account, and evidence from his phone and business records from X, Google, and his internet service provider confirm as much. Fourth, Defendant's follow-up post is similar to his charged conduct in Count 4. In both posts, Defendant threatens to kill a Missouri State Representative who had posted about arguments he had made about carrying concealed weapons during legislative debate in the Missouri State House of Representatives. (*See supra* at 13 (citing *Johnson*, 132 F.3d at 1283).) Therefore, this Court should, alternatively, admit Defendant's post on X under Rule 404(b).

### 3.    Defendant's April 2024 note in his phone

The United States anticipates introducing the following evidence from Defendant's phone, which law enforcement seized from his bedroom: Apple Notes entry on or about April 18, 2024, at 1:41 p.m. UTC stating: "Zionists are children of Satan and therefore incapable of human compassion or speaking any kind of Truth. They were born to be firewood for hell to keep heaven warm." (PLUMMER_000492-PLUMMER_000500.)

16

The Court should admit the evidence of Defendant's note under Rule 404(b) because all four prongs of the Ninth Circuit's four-part test are met. First, Defendant's note tends to prove his intent, knowledge, and motive for his threat charged in Count 1. Defendant's note that "Zionists are children of Satan and therefore incapable of human compassion or speaking any kind of Truth" and that they "were born to be firewood from for hell to keep heaven warm" reflects an antisemitic belief, *see, e.g.,* CBS News, *"Jews are the children of Satan" and the danger of taking biblical passages out of context* (Oct. 31, 2018 at 9:49 AM EDT),[7] shows his intent to demonize Jewish people, and explains his motivation for threatening them due to their faith or ethnicity. *See Miah*, 120 F.4th at 108, 110 (affirming admission of evidence of defendant's animosity towards a group of people and finding it established knowledge that his communications would be viewed as threats); *Linehan*, 835 F. App'x at 916-17 (9th Cir. 2020) (affirming admission of threatening emails showing "the basis for [defendant's] belief that he was aggrieved and the durability and depth of his anger at government officials"). Second, this note is from two months before the charged threats, and one month before the other uncharged threats that the United States seeks to introduce as evidence at trial, so it is not too remote. (*See supra* at 12-13 (citing *Miah*, 120 F.4th at 112; *Linehan*, 835 F. App'x at 916-17).) Third, this information was extracted from Defendant's phone, so it's reliable evidence. Fourth, this note about Jewish people is similar to his charged conduct in Counts 1–3 where he threatens to harm and kill Jewish people. Therefore, this Court should admit Defendant's post on X under Rule 404(b).

**B.    Rule 403 Balancing Does Not Preclude Admission of Rule 404(b) Evidence**

Applying Rule 403 balancing to Defendant's message on TikTok, five posts on X, X's temporary locks of Defendant's "@cybersurfer79" X account, and Defendant's note in

---

[7] https://www.cbsnews.com/news/jews-are-the-children-of-satan-john-8-44-danger-of-taking-biblical-passages-out-of-context/ (last visited Apr. 9, 2026)

17

his phone, favors admission as the probative value is not substantially outweighed by the danger of unfair prejudice or other Rule 403 concerns. *See Miah*, 120 F.4th at 108 (affirming admission of social media posts containing threats); *Liesse*, 2021 WL 5275819, at *2 (admitting evidence of actions taken, and threats made, before charged conduct and concluding "[t]he admission of homophobic statements in these notes does not change this result, as such slurs were also probative of [the defendant's] subjective intent and not unfairly prejudicial"). This message on TikTok, posts on X, X's responses, and the note are clearly probative of Defendant's intent to communicate the threats with which he is charged and his knowledge that they would be viewed as such, or at least his conscious disregard of a substantial risk that they would be viewed as such. This evidence is also clearly probative of Defendant's motives for making these threats. *See LeMay*, 260 F.3d at 1026 ("evidence that a defendant has committed similar acts in the past is routinely admitted in criminal prosecutions under Rule 404(b) to prove preparation, identity, motive, absence of mistake or accident, and for a variety of other purposes.")

Moreover, there is no risk of unfair prejudice to Defendant if the United States introduces this evidence as the content is similar to the threats made in the posts charged in the Indictment, the content of which the jury will hear at trial. And in any event, the Court can provide the limiting instruction in Ninth Circuit Jury Instructions § 2.10 to eliminate the risk of any unfair prejudice. *See Linehan*, 835 F. App'x at 916-17 (affirming admission of "evidence of prior threats" under Rules 403 and 404(b) and noting district court's "careful limiting instruction"); *United States v. Romero*, 282 F.3d 683, 688 n.1 (9th Cir. 2002) (finding limiting instruction adequately protected defendant against any unfair prejudice from admission of evidence pursuant to Rule 404(b) (citation omitted)). Therefore, this Court should not use the "extraordinary remedy" in Rule 403 of excluding otherwise relevant evidence. *Mende*, 43 F.3d at 1302 (quoting *Patterson*, 819 F.2d at 1505).

18

**C.      The United States' Use of Other Acts-Evidence as Impeachment.**

The United States does not know whether Defendant will testify at trial. If he does, the United States intends to use the evidence for which it is providing notice under Rule 404(b) for impeachment purposes pursuant to Rule 608(b) of the Federal Rules of Evidence. The United States may also use his declaration on TikTok, "Well, it's official. I hate Jews." (PLUMMER_001501), and his many other posts on X using his "cybersurfer79" account (PLUMMER_001278) and his "prepperbeenet" account (PLUMMER_001239).[8]

## V.      CONCLUSION

The United States provides notice of its intent to present the evidence of Defendant's other crimes, wrongs, or acts, which is admissible pursuant to Rules 401, 402, 403, and 404(b), to prove Defendant's intent, knowledge, motive, and absence of mistake or accident.

Respectfully submitted this 16th day of April 2026,

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

_s/ Bruce R. Van Baren_
RAYMOND K. WOO
BRUCE R. VAN BAREN
Assistant United States Attorneys

---

[8] The United States also provides notice of its intent to use these confessions, admissions, and statements pursuant to Local Rule 16.1(a).

19

## CERTIFICATE OF SERVICE

I certify that on April 16, 2026, I electronically transmitted the foregoing to the Clerk's Office using the Case Management/Electronic Case Filing System ("CM/ECF"), which will automatically serve a copy via email to all CM/ECF registrants pursuant to Fed. R. Crim. P. 49(3)(A), Local Rule (Criminal) 49.3, and Local Rule Civil 5.5(h).

_s/ Bruce R. Van Baren_
U.S. Attorney's Office